SLIP OPINION

Cite as 2016 Ark. 312

# SUPREME COURT OF ARKANSAS.

**No.** CR–08–514

| | |
|---|---|
| JOSEPH M. BIENEMY<br>**PETITIONER**<br><br>V.<br><br>STATE OF ARKANSAS<br>**RESPONDENT** | **Opinion Delivered** September 15, 2016<br><br>PRO SE PETITION TO REINVEST JURISDICITON IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS OR ALTERNATIVELY, TO RECALL THE MANDATE, OR OTHER RELIEF<br>[WHITE COUNTY CIRCUIT COURT, NO. 73CR-07-211]<br><br><br>PETITION DENIED. |

**PER CURIAM**

Petitioner Joseph M. Bienemy was found guilty by a jury of being an accomplice to capital murder in the death of Carlos Deadmon, who was shot twenty-two times as he sat in his vehicle attempting to leave the Pecan Street Apartments in Searcy, Arkansas. Bienemy was sentenced to life imprisonment without parole. On appeal, Bienemy argued that the evidence presented at trial was insufficient to support his conviction. This court affirmed, finding that the challenge to the sufficiency of the evidence had not been preserved. *Bienemy v. State*, 374 Ark. 232, 287 S.W.3d 551 (2008). Bienemy subsequently filed a postconviction petition pursuant to Rule 37.1 (2008) in the trial court, which was denied in 2009. We affirmed that denial. *Bienemy v. State*, 2011 Ark. 320 (per curiam).

Now before this court is Bienemy's pro se application to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis or, alternatively, to recall the mandate. Bienemy attached to his petition a supplemental crime-lab report generated in

2009, following Bienemy's trial and conviction that identified the presence of DNA on items recovered from the crime scene from a second individual, Shedric Williams. Bienemy contends that he is entitled to relief because this supplemental crime-lab report contained material, exculpatory evidence that had been withheld by investigators and the prosecution.

Before addressing the merits of Bienemy's claim for relief, a recitation of the evidence adduced at his trial is necessary. Although we did not address Bienemy's challenge to the sufficiency of the evidence on direct appeal, we thoroughly summarized the evidence presented at his trial. *Bienemy*, 374 Ark. at 233–37, 287 S.W.3d at 552–55. The testimony and evidence as summarized established that the shooting death of Carlos Deadmon occurred on the morning of November 26, 2006, and that witnesses reported seeing a gray Jeep parked behind Deadmon's car in the parking lot of the Pecan Street Apartments prior to the murder, and that this same Jeep was seen speeding away after the murder had occurred. A police detective subsequently located a Jeep matching the description provided by these witnesses at another apartment complex—the Meadow Lake Apartments— where it was discovered that the Jeep bore a sticker from Enterprise Rental. Employees of Enterprise Rental were subsequently interviewed and confirmed that the Jeep had been rented by Bienemy on November 25, 2006. Although Bienemy told an investigator that he had left town on November 25, 2006, and that he was out of town on the date of the crime, police officers obtained and viewed surveillance footage from a local gas station and testified that the video showed Bienemy exiting a gray Jeep on the morning of November 26, 2006, and paying for gas, and that it appeared as if a second person was in the vehicle. Investigators also recovered a partially smoked cigar with a plastic mouthpiece from the

parking lot of the crime scene. A forensic examiner testified that DNA recovered from this mouthpiece matched a DNA sample provided by Bienemy. The testimony of Darian Williams, who lived at the Pecan Street Apartments and regularly bought crack cocaine from Bienemy as well as from Bienemy's father, Joe Knight, provided evidence of Bienemy's motive, and stated that Deadmon had stolen a substantial amount of money from Bienemy and Knight. According to Williams, Bienemy appeared at the Pecan Street Apartments the day before the murder and asked Williams to let him know when Deadmon was in the area. Williams further testified that on the date of the murder, Williams was at Knight's apartment to buy drugs when he saw Bienemy, accompanied by another black male, enter the apartment carrying an object wrapped in a towel. Finally, Deadmon's girlfriend witnessed the shooting and testified that when Deadmon got into his vehicle, the gray Jeep backed up while the shooter emerged from its passenger side.

Based on the above and for the reasons stated below, Bienemy fails to establish entitlement to coram-nobis relief. At the outset, we note that Bienemy's alternative request to recall the mandate is unavailing because such motions are applicable to redress errors in the appellate process—meaning an error that this court made or overlooked while reviewing a case where the death penalty was imposed. *Ward v. State*, 2015 Ark. 61, at 3, 455 S.W.3d 818, 821, *cert. denied*, __ U.S. __, 136 S. Ct. 326 (2015). The death penalty was not imposed in Bienemy's case, and the allegations contained in his petition do not pertain to errors made in the appellate process.

With respect to Bienemy's petition for coram-nobis relief, a petition filed in this court for leave to proceed in the trial court where the judgment was entered is necessary

SLIP OPINION

because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Roberts v. State*, 2013 Ark. 56, at 11, 425 S.W.3d 771, 778. Furthermore, a writ of error coram nobis is an extraordinarily rare remedy and its proceedings are attended by a strong presumption that the judgment of conviction is valid. *Howard v. State*, 2012 Ark. 177, at 4, 403 S.W.3d 38, 42–43.

The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id.* The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.* The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* We have held that a writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id.*

Here, Bienemy alleges that the prosecutor withheld material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). As stated above, in support of this claim, Bienemy attached reports generated by the Arkansas State Crime Lab analyzing DNA samples obtained from evidence recovered from the crime scene. The first report, dated January 9, 2007, identified and labeled this evidence as follows: a cigar with a plastic mouthpiece was labeled Q1a; a separate cigar piece was labeled Q1b; swabs taken from the parking lot were labeled Q2; swabs taken from a plastic filter of a cigar were labeled Q3; and cuttings from a

paper towel from the front passenger seat were labeled Q4. This first report concluded that Bienemy's DNA was found on evidence labeled Q1a and that the DNA extracted from evidence labeled Q1b included a mixture of DNA from more than one individual of which Bienemy could not be excluded. The supplemental report dated April 6, 2009, provides the following analysis: the DNA extracted from Q2 and Q4 was consistent with a DNA sample provided by Shedric Williams and that Shedric Williams, like Bienemy, could not be excluded as a contributor to the DNA extracted from the cigar piece labeled as Q1b.

There are three elements necessary to establish a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Howard*, 2012 Ark. 177, at 8, 403 S.W.3d at 44. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Newman v. State*, 2009 Ark. 539, at 13–14, 354 S.W.3d 61, 69. The rule set out in *Brady* also pertains to evidence known only to police investigators and not to the prosecutor. *Id.* Thus, in order to comply with the standard set forth in *Brady*, a prosecutor has a duty to discover any favorable evidence that is known to individuals who are acting on behalf of the State. *Id.* When determining whether a *Brady* violation has occurred, it must first be established that the material was available to the State prior to trial and the defense did not have it. *Cloird v. State*, 357 Ark. 446, 452, 182 S.W.3d 477, 480 (2004).

Bienemy was tried as an accomplice to capital murder because evidence discovered during the investigation and presented at trial established that a second individual had acted

in concert with Bienemy. The identity of Shedric Williams as a contributor to DNA recovered from the crime scene was not discovered until 2009, after Bienemy's trial and after his conviction had been affirmed on appeal. *Bienemy*, 374 Ark. 232, 287 S.W.3d 551. Bienemy fails to establish that the identity of Shedric Williams was known and withheld by the State prior to Bienemy's trial. *Cloird*, 357 Ark. at 452, 182 S.W.3d at 480. Furthermore, the evidence contained in the 2009 forensic report is neither material nor exculpatory and would not have prevented the rendition of the judgment.

The supplemental crime-lab report relied on by Bienemy merely confirms the evidence presented at trial that he had an accomplice. Moreover, the supplemental report does not invalidate the evidence that Bienemy was the sole contributor to the DNA found on the plastic mouthpiece recovered from the crime scene; the circumstantial evidence connecting Bienemy to the Jeep identified as the vehicle involved in the shooting; the evidence and testimony that provided Bienemy with the motive and the opportunity to commit the crime; or the evidence demonstrating that Bienemy had lied to investigators regarding his whereabouts on the day the crime was committed. A *Brady* violation is established when material evidence favorable to the defense is wrongfully withheld by the State. *Stewart v. State*, 2016 Ark. 43, at 4, 481 S.W.3d 760, 763. Bienemy fails to demonstrate that the identification of Shedric Williams's DNA on items recovered from the crime scene was either material or wrongfully withheld by the State. There is no showing that DNA recovered at the crime scene and subsequently connected to a second individual would have prevented Bienemy's conviction as an accomplice to capital murder.

Petition denied.